UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| FRANKLIN V. FENNELL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:22-cv-00401-JMS-MKK |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____) | |
| ) | |
| VIGO COUNTY SCHOOL CORPORATION, ) | |
| ) | |
| Intervenor. ) | |

**Order Denying Writ of *Coram Nobis***

A jury convicted Petitioner Franklin Fennell on all nine charged counts of wire fraud, one count of theft of government funds, and two counts of making false statements to the FBI during the investigation. *United States v. Fennell*, 925 F.3d 358, 361 (7th Cir. 2019). Fennell completed a 24-month term of incarceration and now seeks relief through a writ of *coram nobis* under 28 U.S.C. § 1651. Because Fennell has not shown a fundamental defect in his conviction, his petition for relief is **denied.**

**I. Background**

The Seventh Circuit summarized Fennell's crimes on appeal. This summary reflects that Fennell's convictions were not based on solely on a single witness's testimony. Instead, the cooperating witness's testimony merely corroborated the "voluminous record" including recorded conversations that the jury heard and the invoice, payment, and bank records that they saw.

1

>Fennell was the facilities and transportation director for the Vigo County School Corporation in Indiana. In that role, he submitted requests for maintenance work to the school district, which then authorized vendors to complete the work and paid them on completion.
>
>Fennell and co-defendant Frank Shahadey, a district security officer, invited vendor Mike Pick to submit inflated estimates and invoices for recurring projects, like tree trimming and tree removal, in exchange for kickbacks. Fennell himself would award the contract to Pick on behalf of the district. Sometimes, the maintenance projects were wholly fictitious.
>
>When Pick received a payment, he deposited the check and withdrew cash from those funds to pay kickbacks to Fennell and Shahadey. Pick performed approximately 58 jobs for the district. For most of those jobs, Fennell and Shahadey jointly received kickbacks ranging from $500 to $9,000 per invoice. Pick later cooperated with the FBI to record phone calls and meetings with Shahadey and Fennell.
>
>At trial, an FBI agent testified about her analysis of the amounts embezzled, based on Pick's testimony, work orders, initial estimates, purchase requisitions, invoices, and bank statements. To summarize the voluminous records, the agent created a chart labeled Exhibit 37-2. She itemized each invoice attributed to Pick from 2014 to 2016, detailing the dates, amounts charged, and kickbacks paid to Fennell and Shahadey.
>
>The agent testified that Pick's kickback payments to Fennell and Shahadey totaled $110,600. To calculate the kickback from each invoice, the agent relied on Pick's interviews with the FBI about the amount he withdrew each time to pay the defendants, on bank statements of his withdrawals, and on audio recordings and surveillance of money exchanges between Pick and the defendants.

*United States v. Fennell*, 925 F.3d 358, 360–61 (7th Cir. 2019). Fennell's attorney thoroughly cross-examined Pick, including focusing on Pick's own role in the scheme. Crim. Dkt. 143 at pp. 157–221.

## II. Legal Standard

A writ of *coram nobis* is a means to collaterally attack a criminal conviction based on alleged errors of law or fact that affect the fundamental character of the conviction, including inadequate counsel. *Chaidez v. United States*, 568 U.S. 342 (2013). A petition requesting such a writ is similar to a habeas corpus petition. It seeks the same type of relief, *United States v.*

2

*Bonansinga*, 855 F.2d 476, 478 (7th Cir. 1988), but is available only when a defendant is no longer in custody and thus can no longer benefit from habeas corpus relief, *Stanbridge v. Scott*, 791 F.3d 715, 720 n.3 (7th Cir. 2015).

> A writ of *coram nobis* is reserved for "extraordinary cases" when "(1) the error alleged is 'of the most fundamental character' as to render the criminal conviction 'invalid'; (2) there are 'sound reasons' for the defendant's 'failure to seek earlier relief'; and (3) 'the defendant continues to suffer from his conviction even though he is out of custody.' "

*United States v. Peel*, No. 22-2616, 2023 WL 2609118, at *2 (7th Cir. Mar. 23, 2023) (quoting *United States v. Denedo*, 556 U.S. 904, 911 (2009)).

The Seventh Circuit has clarified that a "fundamental error that invalidates a criminal proceeding is one that undermines our confidence that the defendant is actually guilty." *United States v. Wilkozek*, 822 F.3d 364, 368 (7th Cir. 2016); *see also United States v. Keane*, 852 F.2d 199, 205–06 (7th Cir. 1988) (denying defendant's petition for writ of *coram nobis* in part due to his failure to demonstrate that a "fundamental defect that produce[d] a complete miscarriage of justice" occurred in his case). "Only errors of this magnitude justify the cost of putting aside the interest in finality." *Wilkozek*, 822 F.3d at 368.

### III. Discussion

The Court begins (and ends) its analysis by considering whether Fennell has presented a fundamental error. Fennell asserts that the government failed to disclose exculpatory evidence in contravention of *Brady*. Dkt. 1 at 1. But no exculpatory evidence has been identified that was not previously disclosed to Fennell's counsel. And, "new evidence which is merely impeaching is not grounds for granting a new trial." *United States v. Scherer*, 673 F.2d 176, 179 (7th Cir. 1982) (denying writ of error *coram nobis*, in part, where newly discovered evidence was only impeaching).

In *Brady,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (internal quotations omitted). The Supreme Court has set out the three components or essential elements of a *Brady* prosecutorial misconduct claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281–282 (1999). "[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Banks v. Dretke*, 540 U.S. 668, 710 (2004) (citing *Strickler,* 527 U.S. at 281).

Fennell presents what he believes are four *Brady* violations. The prosecution failed to disclose that: 1) Co-defendant Shahadey told law enforcement that Pick was involved with the mob/mafia; 2) Pick tried to entrap a local attorney in a mileage roll back fraud while working with the FBI;[1] 3) Co-defendant Shahadey had nothing bad to say about Fennell although he was offered release from prison to do so; and 4) Fennell was not given witness statements (FBI 302 summaries) from Stephen Steward, Wade Hood, Ed Bradley, Jay Etling, or Tom Lentz. Dkt. 1 at 2-4. Fennell

---

[1] After the Government pointed out that there was no evidence to support this claim, dkt. 15 at 13-14, Fennell filed supplemental materials which reflect the local attorney's testimony that Shahadey told law enforcement that Pick participated in a scheme with a friend in Detroit to turn back miles on a leased vehicle to avoid paying surcharges for excess miles. Dkt. 23-1 at 2; *see also* dkts. 17 and 23. These facts fall short of attempted entrapment. In addition, this information was included in the FBI's 302 summary for Shahadey and timely provided to Fennell's attorney. Dkt. 25. The report reads: "Shahadey advised Pick was a habitual liar who had been involved in turning back mileage on vehicles in Detroit, MI, and Sullivan, IN." Dkt. 25-1 at 3. In other words, the only information supported by evidence is not new and was disclosed by the Government.

explains, "If you review the above listed *Brady* violations, it is reasonable to believe that any one of these items would create issues about Pick's credibility." *Id.*

In response, the Government states that it has no evidence to support the assertion that Pick was involved with the mob/mafia, or that Pick tried to entice or entrap attorney Ellis to commit a crime by rolling back miles before returning a truck to the car dealer. Dkt. 15 at 16. In addition, if such evidence did exist it would be merely impeaching. *Id.* at 17. As to the claim that Shahadey was offered a plea deal to testify against Fennell but declined to do so, such claim does not violate *Brady* because 1) this fact was known to counsel prior to trial; 2) the plea agreement implicated Fennell's guilt; and 3) Shahadey did not testify at trial, such that there was no possibility that this information could have been used as impeachment evidence. Dkt. 15 at 17. Finally, summaries of interviews with Stephen Steward, Wade Hood, Ed Bradley, Jay Etling, and Tom Lentz were not provided because they were not relevant or favorable to Fennell's case, so the failure to disclose them is also not a *Brady* violation. Dkt. 15 at 17-18.

The information Fennell reportedly learned after his release from prison may raise questions in his own mind, but it cannot call his convictions into question. *See* dkt. 1 at 4 ("I should say potential Brady violation, because I don't really know if these statements would benefit me or not."). And "a petition for a writ of error *coram nobis* may not be used 'to allow a defendant to fish for facts that may or may not exist and may or may not justify the motion in the first instance.'" *Scherer*, 673 F.2d at 179–80 (quoting *United States v. Balistrieri*, 423 F. Supp. 793, 795 (S.D. Ill. 1976), *aff'd*, 606 F.2d 216 (7th Cir. 1979)); *United States v. Jumah*, 599 F.3d 799, 809 (7th Cir. 2010).

Nor is there any suggestion that exculpatory evidence was suppressed. Instead, Fennell's claim involves possible impeachment evidence. Dkt. 15 at 15. He says that with the allegedly

5

suppressed evidence he "would have had a course to attack the credibility of Mike Pick." Dkt. 1 at 7. But "new evidence which is merely impeaching is not grounds for granting a new trial." *Scherer*, 673 F.2d at 179 (denying writ of error *coram nobis*, in part, where newly discovered evidence was only impeaching). Pick's testimony merely corroborated the recorded conversations that the jury heard and invoice and payment records that they saw. *Accord United States v. Bender*, 539 F.3d 449, 456 (7th Cir. 2008) (to establish grounds for a new trial, defendant must show, in part, that newly discovered evidence "is material, and not merely impeaching or cumulative"). Pick's involvement in the scheme and general truthfulness were heavily litigated at trial, Crim. R. 143, pp. 3–233, and *coram nobis* is not the forum to relitigate Pick's testimony.

### IV. Conclusion

On the record before the Court, Fennell has not shown a miscarriage of justice that would warrant disturbing the legitimate interest in the finality of his conviction. When all the evidence is considered, Fennell has not set forth information that could support a *Brady* violation. The petition for a writ of *coram nobis* is **denied**, and Judgment dismissing this action shall now issue.

IT IS SO ORDERED.

Date: 2/12/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

FRANKLIN V. FENNELL
97 Woodbine
Terre Haute, IN 47803

Jonathan Lamont Mayes
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
jmayes@boselaw.com

Tyler John Moorhead
BOSE MCKINNEY & EVANS LLP
tmoorhead@boselaw.com

Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brian.reitz@usdoj.gov